FILED

07/28/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0759

DA 24-0759

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 172N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JUAN ANASTASIO RODRIGUEZ,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-09-420
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Britt Cotter, Cotter Law Office, P.C., Polson, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

      Joshua A. Racki, Cascade County Attorney, Kory Larsen, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs: June 3, 2026

Decided:  July 28, 2026

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Juan Anastasio Rodriguez (Rodriguez) appeals from the November 1, 2024 Order Modifying Restitution entered in the Eighth Judicial District Court, Cascade County, modifying his restitution from $92,564.58 to zero. We affirm.

¶3 This case involves repeated efforts by Rodriguez to challenge the imposition of his restitution order. In August 2010, Rodriguez entered into a plea agreement wherein he admitted to committing burglary, a felony, and witness tampering, also a felony. In the course of his burglary, Rodriguez caused the victim significant injuries requiring hospitalization. At sentencing, the State produced itemized medical bills paid by Medicare on behalf of the victim for a total of $92,564.58, but no affidavit in support of the victim's restitution award. The Pre-sentence Investigation (PSI) report instructed that restitution payments should be sent to Medicare and provided the relevant policy number. Rodriguez never appealed this restitution order. Instead, upon the revocation of his deferred sentence he petitioned for a writ of habeas corpus in 2022 challenging his conviction as well as the restitution order because no affidavit was presented and no hearing about his ability to pay restitution occurred. We denied his writ because Rodriguez brought "his claims too late to this Court and through the wrong remedy of habeas corpus." *Rodriguez v. Salmonsen*,

2

No. OP 22-0692, 411 Mont. 386, 521 P.3d 1157, at *3 (Dec. 20, 2022) (*Rodriguez IV*). We noted that "[a]ny challenge to the court's imposition of restitution should have been raised in a direct appeal." *Rodriguez IV*, at *3. Rodriguez again challenged his sentence, including restitution, in 2023, and we concluded that the doctrine of res judicata barred his claim because he merely raised arguments already litigated. *Rodriguez v. Salmonsen*, No. OP 23-0227, 412 Mont. 552, 530 P.3d 1270, at *3-4 (May 2, 2023) (*Rodriguez V*).

¶4    In 2024, Rodriguez, appearing pro se, moved the District Court to waive all restitution and administrative fees. Rodriguez was appointed counsel who appeared at a hearing in October 2024 before the District Court. Although the State filed a brief in opposition to Rodriguez's motion, it did not appear at the hearing. A representative of the victim's estate also did not appear.[1] Rodriguez argued that restitution should not have been imposed at all and, alternatively, that it should be modified to zero based on his inability to pay. The District Court refused to entertain revisiting the 14-year-old restitution order and reasoned that Rodriquez's proper avenue for relief was under § 46-18-246, MCA (2009), which provides that a court may modify restitution "at any time" under certain circumstances.[2] The District Court further reasoned that given that neither the State nor the victim's estate were present to provide evidence of what the restitution amount should

---

[1] Rodriguez alleged that restitution payments were paid to the victim directly rather than to Medicare as was provided in the PSI. Neither the State nor the victim's estate were present at the hearing to clarify to whom restitution payments were issued.

[2] The State points out that the law in effect at the time of Rodriguez's offense was the 2009 version of the statute. *See State v. Goff*, 2011 MT 6, ¶ 18, 359 Mont. 107, 247 P.3d 715 ("The law in effect at the time an offense is committed controls as to the possible sentence for the offense, as well as the revocation of that sentence."). For the reasons set forth below we decline to consider whether the Legislature intended the phrase "at any time" to circumvent the timeline to appeal.

be any amount between $92,564.58 and zero "would be utterly speculative." Meanwhile, Rodriguez had brought another pro se petition for a writ of habeas corpus once again challenging the imposition of restitution. We explained, "Rodriguez cannot challenge his restitution when he did not appeal in 2010." *Rodriguez v. Salmonsen*, No. OP 24-0731, 420 Mont. 402, 561 P.3d 587, at \*4 (Dec. 31, 2024) (*Rodriguez VII*) (citations omitted). We further expounded that "Rodriguez is not entitled to any refund of the restitution that he has paid, as the District Court concluded in its November 1, 2024 Order." *Rodriguez VII*, at \*4.

¶5 In the instant appeal Rodriguez appears with counsel and argues that the 2010 restitution award was illegal, the District Court erred when it refused to consider the legality of the restitution award, and, alternatively, that Rodriguez's defense counsel was ineffective at the hearing on Rodriguez's motion to waive restitution. The State answers that Rodriguez's claim that the restitution award was illegal is barred by res judicata and that Rodriguez cannot show ineffective assistance of counsel because the District Court modified the restitution amount to zero. The issues on appeal are, thus, whether res judicata bars Rodriguez's claim that the restitution order was unlawfully imposed and whether his postconviction counsel provided ineffective assistance of counsel.

¶6 A restitution award presents mixed questions of law and fact which we review de novo. *State v. Lodahl*, 2021 MT 156, ¶ 11, 404 Mont. 362, 491 P.3d 661. "We review for correctness the legality of a restitution obligation." *Lodahl*, ¶ 11. Ineffective assistance of counsel (IAC) claims are mixed questions of law and fact which we review de novo. *State v. Polak*, 2021 MT 307, ¶ 10, 406 Mont. 421, 499 P.3d 565.

4

**Legality of the Restitution Order**

¶7 An appeal of a criminal judgment must be taken within 60 days after entry of the judgment from which appeal is taken. M. R. App. P. 4(5)(b)(i). The doctrine of res judicata may not be applied in such a manner as to deprive a criminal defendant of the right to seek relief through a post-conviction procedure. *Montgomery v. State*, 2016 MT 169, ¶ 11, 384 Mont. 120, 375 P.3d 403. Res judicata can, however, bar the rehearing of issues already litigated under the rule in *Sanders v. United States*, 373 U.S. 1, 15-17, 83 S. Ct. 1068, 1077-78 (1963). *Montgomery*, ¶ 11 (citation omitted). In the context of criminal cases, the doctrine of res judicata bars relitigation of issues where:

> (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application,
> (2) the prior determination was on the merits, and
> (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Montgomery*, ¶ 12 (citations omitted).

¶8 Here, Rodriguez failed to timely appeal the legality of the restitution award based on a lack of an affidavit or testimonial evidence in support of restitution. Instead, Rodriguez waged collateral attacks on the restitution award through his 2022 Petition for Writ of Habeas Corpus where this Court concluded on the merits that he brought "his claims too late to this Court and through the wrong remedy of habeas corpus." *Rodriguez IV*, at *3. We applied res judicata to Rodriguez's 2023 Petition for Writ of Habeas Corpus in *Rodriguez V.* We have previously determined on the merits that Rodriguez's claim that the restitution award was imposed unlawfully is time-barred because he failed to file a timely appeal of that issue.

5

¶9     The ends of justice cannot be served by reaching the merits of Rodriguez's subsequent attempt to relitigate the legality of the restitution award because the District Court properly modified the restitution to zero. Rodriguez no longer has any restitution obligations. Rodriguez's counsel appropriately sought post-conviction relief under § 46-18-246, MCA (2009). The District Court correctly determined under *Lodahl* that because Rodriguez made a showing of an inability to pay and neither the State nor the victim's estate were present at his hearing to challenge this showing, any restitution amount between $92,564.58 and zero would be utterly speculative and therefore modified the restitution award to zero. Accordingly, the District Court correctly determined that Rodriguez's challenge to the legality of the original imposition of restitution is time-barred and this claim is precluded under res judicata.

**Ineffective Assistance of Counsel**

¶10     "The right to effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, and by Article II, Section 24 of the Montana Constitution." *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, 97 P.3d 1095. We apply a two-prong inquiry to IAC claims: (1) whether counsel's performance fell below an objective standard of reasonableness and (2) whether the defendant was prejudiced to the extent that there was a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Kougl*, ¶ 11. "The first prong carries a strong presumption in favor of the State, as counsel is allowed wide latitude in deciding what tactics she should, and should not, employ in defending her client." *Kougl*, ¶ 11. In general, we begin an IAC inquiry by asking "why"

6

counsel did or did not perform as alleged and then seek to answer that question through a review of the record. *Kougl*, ¶ 14. Where the record on appeal explains the "why," we will address the issue on direct appeal. *Kougl*, ¶ 14. But where, as is often the case, the claim is based on matters beyond the record on appeal, we will refuse to address the issue on appeal and permit the defendant to file a postconviction proceeding where he or she may develop the record to show "why" counsel did or did not perform as alleged and, thus, allow a trial court to determine whether counsel's performance was ineffective or a mere tactical decision. *Kougl*, ¶ 14.

¶11 Here, Rodriguez argues that his counsel was deficient in not properly framing the issue as a question of the legality of the 2010 restitution order. The record reveals, however, that Rodriguez's counsel began the hearing by challenging the legality of the restitution order and then, upon the District Court's urging, shifted to seeking relief under § 46-18-246, MCA (2009). Rodriguez insists that his counsel should have done more than simply read the plain language of the statute and argued that it should be interpreted in such a way as to require the court to rule on the legality of the original imposition of restitution at any time. The record here does not reveal why, however, Rodriguez's counsel chose not to continue pressing the issue and instead seek relief under § 46-18-246, MCA (2009), upon the District Court's invitation. Accordingly, the record on appeal does not explain the "why" behind Rodriguez's counsel's performance and we therefore decline to review his IAC claim on direct appeal since a postconviction proceeding would be the proper avenue to seek relief.

¶12    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶13    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ KATHERINE M. BIDEGARAY
/S/ JIM RICE